## Case No. 165.

### The ALEXANDER.

[3 Mason, 175.][1]

Circuit Court, D. Massachusetts. May Term, 1823.

#### SLAVE TRADE—FORFEITURE OF VESSEL.

The first section of the slave trade act of 1800, c. 51, [2 Stat. 70, § 1,] prohibits not merely the transportation of slaves, but the being employed in the business of the slave trade; and therefore a vessel caught in such trade, though before she has taken slaves on board, is liable to forfeiture.

[Cited in The Porpoise, Case No. 11,284.]

[Appeal from the district court of the United States for the district of Massachusetts.]

In admiralty. Libel of seizure [against the brig Alexander, William Booth, claimant,] founded on the slave trade act of 20th of April 1818, c. 86; the act of 22d March 1794, c. 11; and the act of 10th May, 1800, c. 51.

At the trial the only count, which was sustained by the evidence, was founded on the first section of the act of 1800, c. 51.

Upon the evidence, Blair, for the claimant, contended, that there was no offence within the act of 1800, even supposing the vessel was engaged in the slave trade, because no slaves had been taken on board or were on board during the voyage, for transportation, which was necessary to bring the case within the act.

Blake, Dist. Atty., contended, that the employment in the slave trade was the thing prohibited by the act, and slaves were not necessary to be taken on board to complete the offence. He cited The Plattsburg,[2] before Judge Van Ness at New York, and The Fortuna, 1 Dod. 81.

Before STORY, Circuit Justice, and DAVIS, District Judge.

STORY, Circuit Justice. The first section of the act of 1800, c. 51, [2 Stat. 70, § 1,] on which alone this prosecution can be maintained, declares, "that it shall be unlawful for any citizen &c. directly or indirectly to hold or have any right or property in any vessel employed or made use of in the transportation or carrying of slaves from one foreign country to another, under the penalty of forfeiture." The question is, whether the penalty is affixed to the mere employment of the vessel for the business and for the purpose of transporting slaves, or whether actual transportation is necessary. My opinion is, that the former is the true construction of the act. We often speak of vessels "employed in the coasting trade and fisheries," and the acts of congress use the same lan-

[1][Reported by William P. Mason, Esq.]
[2][Nowhere reported; opinion not now accessible.]

guage, when actual transportation and actual fishing are not intended; but the purpose and business of the voyage are the coasting trade and fisheries. And it has never been doubted, that a vessel licensed for the coasting trade and fisheries, and on a voyage for that purpose, was truly employed in such trade or fisheries, although no goods were in the course of actual transportation, and no fisheries had been yet attempted. Let us look then to the other clauses of the statute, and see whether they do not afford means to ascertain the true sense of the legislature. The second section declares it unlawful for any citizen, &c. "to serve on board any vessel of the United States employed, or made use of, in the transportation or carrying of slaves from one foreign port to another," on the penalty of fine, not exceeding 2000 dollars, and imprisonment, not exceeding two years. The language of this section is substantially like that of the first. The third section, however, is different. It declares, "that if any citizen, &c. shall voluntarily serve on board of any foreign ship or vessel, which shall hereafter be employed in the slave trade, he shall, on conviction, be liable to, and suffer the like forfeitures, fines," &c. Here the phrase used is, "employed in the slave trade," which shows, that it was the employment in the traffic or business, and not merely the actual transportation, which is the object of the prohibition; and yet it must be almost an irresistible inference, that the legislature had the same general intent in all these three sections. The fourth section still more strongly demonstrates the construction. It declares, "that it shall be lawful for any commissioned vessels of the United States to seize and take any vessel employed in carrying on trade, business or traffic, contrary to the true intent and meaning of this act, or of the said act, to which this is an addition." The words here clearly indicate a legislative intent to reach the case of vessels, whose business, employment, or traffic was slave voyages. Now it appears to me, that every vessel fitted out for the purpose of the slave trade may be truly and accurately said to be employed in that business, and carrying it on, as soon as she has sailed on the voyage. It matters not at what point of the voyage she is captured, her enterprise is the slave trade, and every act done on such a voyage is an act of carrying it on. In the case of The Fortuna, 1 Dod. 81, 86, Sir William Scott adopted a similar doctrine. "It matters not," says he, "in my opinion, in what stage of the employment, (i. e. the slave trade), whether in the inception, or the prosecution, or the consummation of it," the vessel is seized. I interpret the language of the first section of the act of 1800 by that of the third and fourth, and I think, that the legislature intended the same thing in all; and that is, that the employment in the business and for the purposes of the slave trade, and not merely the actual transportation of the slaves, should be prohibited and punished. Decree of condemnation affirmed.